Our next case is International Flora v. Whale. Mr. Crooksmore, when you're ready. Thank you, Your Honor. You may proceed. Good morning. My name is Jeffrey Kirshmer. I'm with the Kirshmer Law Firm in Scottsdale, Arizona. I represent International Flora Technologies Limited, which is usually referred to as Flora Tech. I'm joined by Vanessa Lancaster, a law clerk with the Novelton Gilmore firm, my co-counsel on briefs. Thank you for hearing us today. My opponent has waived his opportunity for oral argument. This is a race judicata case in the context of a trademark trial and appeal board decision, an opposition followed by a cancellation. We believe it has the potential to impact all TTAB litigants. The parties agree on the basic race judicata standard. For race judicata to apply, there are three requirements, a prior final judgment on the merits. Well, that's not quite true. That's not quite true because a determination of standing can also bar a relitigation of the standing issue in a later case. And there's a section of Wright & Miller that deals with that. There are cases that deal with that. So the fact that it isn't on the merits doesn't mean that you ignore the prior decision. You can't relitigate a standing issue in a second case, at least according to Wright & Miller, unless there's new evidence which bears on the standing issue which arose later. So race judicata is not limited to dispositions on the merits. It also bars relitigation of the standing issue. There are exceptions to the on-the-merits standard. That is one. Another is in the case of default judgments where there hasn't been a decision. Okay, but here, what gives you the right to relitigate the standing issue? The allegations that you made the second time around are the same allegations you made the first time around. The media technology case addresses that, and that is a case in which— based on the facts in the original case weren't binding. In the second case, the facts changed. The standing was different. The standing had changed in media technologies, and therefore in the first case there was no standing. In the second case, there was standing. In our case, in the first case, there was a determination that there was no standing, but that was simply due to the fact that the documents which would have established standing weren't properly entered into evidence. The fact is at that time there was standing. But the facts are the same. Was the adjudication final in that opposition on standing? We believe the adjudication was final. It was an appealable point. At that point, yes, it would have been appealable, but an appeal was not taken. Instead, a determination was made following about 100 years of history that if an opposition is denied under the Goodyear case and under the Martin case, which is about 100 years old, the proper thing to do is to file a cancellation at that point, and at that point enter in the proper evidence of standing and the other evidence of likelihood of confusion. But there's no new evidence. It's the same claim of standing in the cancellation proceeding as in the opposition proceeding, right? You claim standing in the opposition based on ownership, and you're claiming standing in the cancellation based on ownership and on goodwill established in your mark. That's correct. Is that your answer to Judge Dyke, that there's a difference? You didn't plead goodwill. That is my recollection of the pleadings. I'm reading from page 26 of the cancellation pleadings. I was looking for any difference between the allegations of harm, harm to what and why, from the opposition to the cancellation, and it seemed to me that the opposition was entirely based on ownership. We own the marks, and somebody flubbed and just didn't dot the i's and cross the t's and put the evidence in. So it seems to me one possible answer to Judge Ice's question is that there's a pleading here of there's goodwill, somehow established in the mark that's independent of its ownership. I agree, Judge Plevenger, and I think there's a second answer, which is— But that still isn't going to help you out because you can't—you don't get any benefit out of Mediatek, which is an Article III case. You know, you don't have to have ownership to have standing at the TTAB. That is correct. You didn't tell us that in your reply brief, but, I mean, for example, if you're a competitor, and in your opposition proceeding you alleged that you were a competitor. That is correct. You had standing. No question about that. That is correct. And the last paragraph of the board's decision on your opposition says—they're not saying, like in Mediatek, you lose for standing. They're saying you fail to carry your burden as proof as a plaintiff. And they do that without ever considering the likelihood of confusion or any kind of comparison. They don't have to because they said one element of your case, one element of your case, was to establish ownership. Not as a matter of standing, but as a matter of the merits. As a competitor, according to our case law. And if we were in a disparagement case or in a case involving standaless marks, all you have to do is say, I'm offended. I don't like O.J. Simpson. I'm going to bring that case that you written some years ago that dropped the standing requirements to zero. I think there's two other problems with— But if you don't get any benefit out of Mediatek, I don't think you do, then you've got a judgment on the merits in the opposition. Well, I think there's—I wouldn't concede that. Well, I know you'd give away your case if you do. Well, I think there's still a problem. Why isn't it? Why wasn't the judgment in the opposition on the merits, on failure of proof of one element of the claim? Because I think it would still require them to adjudicate each of the facts and claims in contention, and that is— Why? In Ray Bo's case requires that. Why? If there are six elements to a claim, and you have to satisfy all six, if you fail on one, why would you burden a court with having to write an opinion on all the other elements? Because in the end, it leaves the litigant without ever having the fact of whether there's a likelihood of confusion considered. And this court's decision is to tell the court on summary judgment— There's no problem. —on erasure. There's all kinds of people. If the marketplace—if housewives are being—if my wife is upset about the JoJo, she can't figure out which one it is, she can go file a cancellation proceeding under our case law. A trade association, if there's one out there that's worried about confusion in this field, they can file an opposition proceeding. They're not going to be barred at all. That's what the De Beers Diamond Company did. It got a trade association to front-run for it and ran—you know all those cases. If the court is suggesting that our remedy is truly to go and file a cancellation without asserting likelihood of confusion, that possibility exists, of course. No, my point is that another plaintiff can mount the likelihood of confusion issue. I think you probably can't. But, I mean, I was worried in the beginning about, oh, my God, all these people that like to use JoJo butter and stuff to make you feel good, they're all going to be confused. And that would be very bad. But the genius of this court's low standing requirement in opposition proceedings provides that a member of the public who can show some personal interest in the outcome, like, I don't know which of these two products to buy, has standing. I think there's two further arguments that we may— I'm not worried. I think if the JoJo world is going to go crazy about this and you can't figure out what's up, somebody will show up and oppose. Is there a difference between a cancellation proceeding and an opposition proceeding in terms of who can oppose and who can move to cancel? I don't think there is, Your Honor. I don't think those are the critical distinctions. I think the critical distinction between the two procedures is the standard. In the cancellation, there's a presumption that it's a valid trademark. In the opposition, there is no such presumption. But also, with likelihood of confusion claims, as time goes by, evidence mounts of the likelihood of confusion. But you didn't allege a different likelihood of confusion as a result of ongoing events, right? We allege—we had never had an opportunity to show that in either statute. No, but it hasn't been in your petition for cancellation or whatever it is. You didn't allege that. We did not allege in the petition for cancellation that our petition for cancellation is going to be significantly different because of the passage of time. That's not stated. But nevertheless, that is what occurs, and that's what the old grantee in court says. It's going to change over time. The facts are going to change over time. We had no basis to say it was going to be different because in the opposition, we had never set forth the facts of—or at least the court had not recognized the facts of likelihood of confusion. In the opposition, therefore, we didn't plead that it's going to be different since there had been no facts entered. But old granting tells us it would have been. Okay, but come back for a moment to the goodwill. I'm not fully understanding this. In an opposition proceeding, are you saying that a competitor could say that the goodwill in my mark has been diluted as likelihood of confusion without alleging ownership? You'd still have to allege ownership, wouldn't you? To say that the strength of their mark, the competitor's mark, has been diluted by the potential use of the registration of trademark, you would have to have an existing family of marks the way Flora Tepp does. That is correct. Okay, so I'm not sure that I understand what the difference is that in the cancellation proceeding there was an allegation of effect on goodwill. Why does that change the standing analysis? Assuming that it is a standing question, why would that change the standing analysis? A standing analysis wouldn't change over time, Your Honor. We can see that standing is a threshold question. You've got it or you don't. Time is not going to change whether or not you had standing to make a likelihood of confusion. So even if we were to assume that Article III standing requirements applied here to the board, there isn't any difference between the standing issue the first time and the second time. No, Your Honor. Then you've got a problem. We would say that the problem isn't the standing, Your Honor, in the second case. The problem is the fact that the likelihood of confusion has changed, and so res judicata shouldn't bind it because it's not the same claim. It may have been on the merits. The fact is the claim has changed. Similarly, we argue in our papers that an opposition and a cancellation are so fundamentally different they're not the same claim. So fundamentally different how? The standards of proof are different, and as the likelihood of confusion changes over time, this decision would effectively place all that against it. How is the standard of proof different? The standard of proof on the cancellation is that there is a presumption that the trademark is valid and there is not a likelihood of confusion. So it's a harder standard. It's a harder standard, but at the same time, the evidence available to show it increases over time. And so any litigant looking to challenge the registration of a mark is between skill and charybdis, saying, Well, I can wait a period of time and develop my facts and assert it at the cancellation, but then I'm up against a presumption that there isn't a likelihood of confusion. Or I can assert it at the opposition stage and not face that presumption, but I may not have any evidence of likelihood of confusion. I simply have to argue, boy, they look and sound the same, and therefore it shouldn't be permitted. But that litigant will know if I lose at the opposition, I'm going to be barred by res judicata from bringing cancellation. I've got to pick one or the other, and every potential person that wants to challenge the registration of a mark is going to face that decision from here on out. Do I bring an opposition with a lower threshold of proof but less evidence, or wait, develop my evidence, bring the cancellation, and face that presumption? I think that's the effect of the ruling against Florotek, and I don't think that as a policy measure that would be a good thing. But that happens in res judicata all the time. You have a claim that you—we're talking about claim, but you have a claim you could have brought, and you had your two parties together, full and fair chance to litigate, judging on the merits. There's a theory of your case you could have brought. Instead of going negligence, you could have gone product warranty, right? You didn't go product warranty. Turns out, six months after the final decision, oh, my God, there's fabulous evidence on product warranty. I couldn't bring it. So you bring your product warranty suit. What happens? Out. Res judicata. The fact that there's a different quantum of evidence that may be required to prove up to the same question is irrelevant to whether or not res judicata applies. I don't think it's irrelevant because— How is your case any different than the one I just gave you? It's just a difference of quantum of evidence you're going to bring forward. Because legislatively, two proceedings have been created, opposition and cancellation. And yet in the absence of legislation, we're now saying you've got to pick one or the other. Well, that's not in the rules. In a district court litigation, you're going to bring one case in a district court, following the second case, same kind of rule one, same kind of proceedings, same court, maybe different allegations. But nevertheless, it's certainly going to be the very same case in front of an Article III court. Here we have two separate structures created by the T.T. legislatively and no legislative requirement that you pick one or the other. That's the effect of this ruling. I see I'm out of time, so unless the court has any further questions, I can wrap up. You don't get a rebuttal argument. Okay, thank you, Mr. Kirchner.